VERMONT SAVINGS BANK *v.* HARRIET A. BAILEY.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 27, 1913.

*Appeal in Chancery—"Final Order"—Dissolution of Temporary Injunction.*

Where a bill in chancery to restrain the prosecution of an action at law against a bank to recover deposits made by defendant's attorney, now without the State, alleged collusion between him and defendant to compel orator to pay the deposits twice, and a temporary injunction was issued, the subsequent dissolution thereof, leaving orator at liberty to take proceedings to establish the alleged conspiracy, was not a "final order," and so not appealable. *Peck* v. *Crane*, 25 Vt. 147, explained.

APPEAL IN CHANCERY, Windham County. Heard at Chambers, March 8, 1912, on defendant's motion for the dissolution of the temporary injunction restraining the prosecution of the action at law, *Taylor*, Chancellor. Injunction dissolved. The orator appealed. The opinion states the case.

*Clarke C. Fitts, Ernest W. Gibson* and *Harold E. Whitney* for the orator.

Though a judgment be not final in the sense of disposing of the case on its merits, yet if it is tantamount to a dismissal of the action an appeal will lie. *Underwood Typewriter Company* v. *Piggott*, 55 S. E. 664; *Stevens et al.* v. *Shaw*, 77 Me. 566, 1 Atl. 743; *Prout* v. *Lomer*, 79 Ill. 331; *Morgan* v. *Rose*, 22 N. J. Eq. 583; *Chegary* v. *Scofield*, Halst. Ch. 525; *Doughty* v. *Somerville etc. Co.*, 3 Halst. Ch. 629; *Attorney Gen.* v. *Paterson*, 1 Stock. 628, 2 MacCarter 501; *Toledo, etc. R. Co.* v. *Detroit, etc.*, 61 Mich. 9, 27 N. W. 715; *Peck* v. *Crane et al.*, 25 Vt. 147; *State* v. *Judge*, 23 La. Ann. 151.

*Charles A. Plumley, Harland B. Howe* and *Harry W. Witters* for the defendant.

HASELTON, J. This is a chancery appeal. The defendant moves to dismiss the appeal on the ground that it was taken from an interlocutory decree and not from a final decree.

In 1906, the orator, the Vermont Savings Bank, brought its bill in this cause against Harriet Bailey, who defended, and in 1911, she having in the meantime died, Hiram L. Sparrow, ad ministrator of her estate, entered to defend.

The case stated by the bill is, in brief this:

The original defendant brought a suit at law against the bank in 1903. The action at law was continued from time to time at the request of the bank down to the time of the bringing of this bill. The specification in the action at law was for certain items or sums of money deposited in the bank, a part in the name of the original defendant, and a part in the name of her son-in-law, Harry Lowe, as trustee.

In August, 1906, the defendant took steps for the taking of depositions in order to get information in relation to the deposits. Thereupon it was that the orator brought this bill. Further facts set up in the bill are these: All the deposits were made by Lowe and none by the original defendant in person. The bank understood and believed that Lowe had authority from her to make and withdraw deposits. He presented a power of attorney giving him such authority. All the deposits, except a small sum, have been withdrawn by Lowe by virtue of the power of attorney. Lowe in making the deposits as trustee represented that he was in fact trustee with authority to make and withdraw the deposits in whole or in part. Immediately after the bringing of the suit at law the orator began a search for Lowe and learned that he had left Vermont, and that he remained outside the State except for occasional visits at night to his home in Montpelier. The orator has expended money and time in endeavoring to locate Lowe. The orator avers that it understands and believes that the original defendant and Lowe confederated and conspired for the purpose, and to the end, of keeping Lowe without the jurisdiction of the courts of this State, and that they confederated and connived to injure and defraud the orator by securing a judgment against it which could not be secured if the testimony of Lowe could be had in the cause; that if Lowe is kept without this jurisdiction until the suit at law is tried, the orator will be compelled to pay deposits a sec-

ond time, whereas with the presence of Lowe in court the orator can successfully defend the suit at law.

The bill asks for an injunction restraining Harriet Bailey from taking the depositions referred to at the date named in the citation in that regard or at any other time, and from proceeding in any way with the suit at law until the orator shall ascertain the whereabouts of Lowe and have a reasonable opportunity to secure his testimony in the suit, or until the defendant shall disclose to the orator the whereabouts of Lowe. A temporary injunction was also prayed for and upon presentation of the bill was granted, *ex parte*, until further order of the court in the premises.

Thereupon the original defendant filed her answer and moved for a dissolution of the injunction. It is unnecessary to review the detailed denials of the answer. Upon hearing the motion to dissolve, made in 1906, the Chancellor overruled the motion, and in doing so said that it was fairly inferable that there was collusion between Lowe and the defendant to compel the bank to pay a second time, and that the orator ought to have a further reasonable time in which to obtain the testimony of Lowe.

When in 1911, Hiram L. Sparrow, administrator, entered to defend, he filed a supplemental answer setting up that the original defendant, Harriet Bailey, had been dead some two years, and that he was administrator of her estate and had entered to defend this chancery suit in accordance with the statute, and had obtained leave of court to file a supplemental answer. He made allegations in addition to those made in the original bill and demurred to the bill. The demurrer was overruled, *pro forma*, the answers were brought forward, and the case was heard on a new motion to dissolve the injunction.

The Chancellor considered that, in view of the action at the hearing on the case as it stood in 1906, the motion to dissolve should be denied, and it was denied; but it was ordered that the orator proceed without delay, and that the case be set down for trial by the court at the earliest possible date, or that application for reference to a special master be made as the parties might be advised. This order was made in March, 1911. In March, 1912, the administrator again moved the Chancellor for a dissolution of the injunction. He set out the bringing of the bill in 1906, the granting of the temporary injunction at that

time, the death of Harriet Bailey in 1909, the filing of the supplemental answer in March, 1911, the motion for the dissolution of the injunction then made, the action of the court thereon, and the order of the court then made that the orator proceed without delay, and averred that the orator did not purpose to proceed with the cause or make any progress therein with respect to its merits, and again moved that the injunction be dissolved.

On hearing, the Chancellor found that the orator had not complied with the order of progress made a year before and dissolved the injunction. It is from the order in this regard that the bank appeals.

It is claimed by the orator that this order in effect disposes of the case and is final. But with this contention we do not agree. Notwithstanding the dissolution of the temporary injunction the orator is still at liberty to proceed with the cause in due course before a master or before a chancellor as it may be advised. An inference of collusion between Harriet Bailey and Lowe was in 1906 declared by the Chancellor to be the only ground for the temporary injunction, and that reason cannot now well be operative since she is dead. The papers furnish no ground for an inference of collusion between the administrator and Lowe.

On all hearings the Chancellor has correctly treated the injunction as temporary, and has made his orders in that view. There has been no final decree or order, and no appeal lay from the order dissolving the temporary injunction. P. S. 1307; *McArthur* v. *Blondin,* 86 Vt. 62, 83 Atl. 468; *Abbott* v. *Sanders,* 83 Vt. 165, 74 Atl. 1058; *Taft* v. *Mossey,* 77 Vt. 165, 59 Atl. 166; *Nelson* v. *Brown,* 59 Vt. 600, 10 Atl. 721; *Hall* v. *Lamb,* 28 Vt. 85.

The orator refers to the case of *Peck* v. *Crane,* 25 Vt. 147, where it was held that an appeal lay from an order granting a temporary injunction, and counsel well say that an order granting an injunction and an order vacating one should seem to stand alike in respect to the matter of an appeal.

But the case of *Peck* v. *Crane,* 25 Vt. 147, needs to be more fully reported in the light of the law as it was for the space of one year.

By No. 19 of the Acts of 1852 it was provided that an appeal should lie from any order of a chancellor granting, dissolving or refusing to dissolve, any temporary injunction. This

act took effect November 23, 1852. The bill in *Peck* v. *Crane* was brought six days later, and a temporary injunction was shortly granted by Chancellor Robert Pierpont. An appeal was taken from the order granting this injunction, and the right to the appeal was sustained by this Court, as appears by the report of the case, 25 Vt. 146. However, at the next session of the Legislature the act of 1852, referred to, was repealed. Acts of 1853, No. 14. So the act of 1852 has never appeared in any revision or compilation of our statutes, and *Peck* v. *Crane,* 25 Vt. 147, as reported, makes no direct allusion to it, for, when the case was decided, the statute was fresh in mind. But when in the opinion the court say, as they do:

"The words of the statute are general, and we see no reason why an appeal should not be allowed as much in this case as in any case," they refer to appeals under the ephemeral statute of 1852, and not to the statutory provision for chancery appeals as we know it. The case arose in Chittenden County, but the appeal was heard in Addison County, and happily the clerks of both counties have been able to supply the data necessary to prevent the case as heretofore reported from being misleading.

This appeal was not from a final decree and was ineffectual. The case is in the Court of Chancery.

*Appeal dismissed.*